FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 27, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

GLORIA P., O/B/O,
A.P., A MINOR CHILD,

      Plaintiff,

      v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

No. 1:17-CV-03194-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 11, 13. Plaintiff brings this action on behalf of her minor child, A.P., seeking judicial review pursuant to 42 U.S.C. § 1383(c)(3) of the Commissioner of Social Security's final decision, which found that A.P. had medically improved and was therefore no longer eligible for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §1381-1383F. *See* Administrative Record (AR) at 1-4, 33-50. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1**

**GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's

Motion for Summary Judgment.

## I.    Jurisdiction and Procedural History

On March 28, 2007, Plaintiff filed an application for Supplemental Security

Income on behalf of A.P., who was two years old at the time. AR 133, 242-48. On

September 16, 2009, an Administrative Law Judge ("ALJ") determined that A.P.

was disabled as defined in the Act was therefore eligible for Supplemental Security

Income as of the application's filing date. AR 133-34, 139.

On March 25, 2014, the Commissioner conducted a continuing disability

review and determined that A.P., who was seven years old at the time, was no

longer disabled and was therefore no longer eligible for Supplemental Security

Income. AR 127-28, 174-77. Plaintiff requested reconsideration on May 2, 2014.

AR 182. On October 24, 2014, a state agency disability hearing officer held a

hearing and on November 7, 2014, the hearing officer upheld the determination.

AR 188-198, 211-12. Plaintiff requested a hearing with an ALJ on November 20,

2014. AR 213.

A hearing with the ALJ occurred on June 6, 2016. AR 93, 95. On August 3,

2016, the ALJ issued a decision concluding that A.P.'s medical impairments had

improved, that she was no longer disabled, and that she therefore no longer

qualified for Supplemental Security Income. AR 33, 36-50. On September 12,

2016, Plaintiff requested review. AR 238, 240. On September 18, 2017, the Appeals Council denied Plaintiff's request for review, AR 1-7, thus making the ALJ's ruling the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. On November 15, 2017, Plaintiff timely filed the present action challenging the cessation of benefits. ECF No. 3. Accordingly, Plaintiff's claim is properly before this Court pursuant to 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g).

## II. The Three-Step Medical Improvement Review Standard

A child is "disabled" for the purposes of receiving Supplemental Security Income benefits if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i). The Act requires the Commissioner to review a disabled child's continued eligibility for benefits at least once every three years. *See* 42 U.S.C. § 1382c(a)(3)(H)(ii)(I). The Commissioner has established a three-step medical improvement sequential evaluation process for determining whether a child continues to be disabled within the meaning of the Act. 20 C.F.R. § 416.994a(b).

At step one, the inquiry is whether there has been medical improvement in the impairments that were present at the time of the most recent favorable determination or decision finding the child disabled (the most recent favorable

determination is called the "comparison point decision" or "CPD," and the impairments that were present at the CPD are called the "CPD impairments").[1] 20 C.F.R. § 416.994a(b)(1); SSR 05-03p. Medical improvement is any decrease in medical severity, except for minor changes. 20 C.F.R. § 416.994a(c). It must be based on changes in the symptoms, signs, or laboratory findings associated with the impairments. 20 C.F.R. § 416.994a(c). If there has been no medical improvement, the child is still disabled, unless one of the exceptions to medical improvement applies.[2] 20 C.F.R. § 416.994a(b)(1). If there has been medical improvement, the inquiry proceeds to step two.

At step two, the inquiry is whether the CPD impairments still meet or medically or functionally equal the severity of the listed impairments that they met or equaled at the time of the CPD. *See* 20 C.F.R. § 416.994a(b)(2); SSR 05-03p. In this case, at the time of the CPD, it was found that A.P.'s impairments functionally equaled the listings. AR 137. Thus, the question at step two is whether A.P.'s CPD impairments still functionally equal the listings. *See* 20 C.F.R. § 416.994a(b)(2); SSR 05-03p. If the impairments still functionally equal the listings, the child is still disabled, unless one of the exceptions to medical improvement applies. 20 C.F.R. §

_____

[1] In this case, the CPD was the ALJ's decision on September 16, 2009, which found that A.P. was disabled. AR 129-139.

[2] None of the exceptions are relevant in this case, so they will not be discussed.

416.994a(b)(2). If they do not, the inquiry proceeds to step three. 20 C.F.R. § 416.994a(b)(2).

At step three, the inquiry is whether the child is currently disabled considering all current impairments, including those the child did not have at the time of the CPD and those that the Commissioner did not consider at that time. 20 C.F.R. § 416.994a(b)(3). This first involves determining whether the child's new or unconsidered impairments are "severe"—meaning more than slight abnormalities that cause no more than minimal functional limitations. 20 C.F.R. § 416.994a(b)(3)(i); 20 C.F.R. § 416.924(c). If the impairments are not severe, the child's disability has ended. 20 C.F.R. § 416.994a(b)(3)(i). If they are severe, the question is whether they meet or medically equal the listings in 20 C.F.R. Part 404, Subpart P, App'x 1. *See* 20 C.F.R. § 416.994a(b)(3)(ii). If they do, the child's disability continues. 20 C.F.R. § 416.994a(b)(3)(ii). If not, the question is whether they functionally equal the listings. 20 C.F.R. § 416.994a(b)(3)(iii). If they do, the child's disability continues. 20 C.F.R. § 416.994a(b)(3)(iii). If not, the child's disability has ended. 20 C.F.R. § 416.994a(b)(3)(iii).

Determining whether a child's impairments functionally equal the listings requires an assessment of the child's limitations in six broad areas of functioning, called "domains." 20 C.F.R. § 416.926a(b)(1). The six domains are: (1) "Acquiring and Using Information," (2) "Attending and Completing Tasks," (3) "Interacting

1  and Relating with Others," (4) "Moving About and Manipulating Objects," (5)

2  "Caring for Yourself," and (6) "Health and Physical Well-being." 20 C.F.R. §

3  416.926a(b)(1)(i-vi). In making this assessment, the factfinder must compare how

4  appropriately, effectively, and independently the impaired child performs activities

5  compared to the performance of other children of the same age who do not have

6  impairments. 20 C.F.R. § 416.926a(b). The child's impairment or combination of

7  impairments will be found to functionally equal the listings if the child has

8  "marked" limitations in at least two of the domains or if the child has "extreme"

9  limitations in any one of the six domains. 20 C.F.R. § 416.926a(d).

10  ### III.   Standard of Review

11  A district court's review of a final decision of the Commissioner is governed

12  by 42 U.S.C. § 1383(c)(3) and 42 U.S.C. § 405(g). The scope of review under

13  these sections is limited, and the Commissioner's decision will be disturbed "only

14  if it is not supported by substantial evidence or is based on legal error." *Hill v.*

15  *Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). In reviewing a

16  denial of benefits, a district court may not substitute its judgment for that of the

17  ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). When the ALJ

18  presents a reasonable interpretation that is supported by the evidence, it is not the

19  role of the courts to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th

20  Cir. 2001). Even if the evidence in the record is susceptible to more than one

rational interpretation, if inferences reasonably drawn from the record support the ALJ's decision, then the court must uphold that decision. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954-59 (9th Cir. 2002).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here. A.P. was just over two months old on the date of the application, two years old on the date of the CPD, and seven years old on the date the Commissioner determined she was no longer disabled. AR 36, 133, 242. The regulations defined her as a school-aged child on the date the Commissioner concluded that her disability ceased. 20 C.F.R. § 926a(g)(2)(iv).

## V.    The ALJ's Findings

The ALJ determined that A.P. had medically improved and was no longer under a disability within the meaning of the Act as of March 25, 2014. AR 50.

With respect to A.P.'s condition at the time of the CPD, the ALJ made the following findings:

The CPD was September 16, 2009. AR 39. At that time, A.P. had the following medically determinable impairments: VATER syndrome, contractures of the hand joints, status post left hand surgery, scoliosis, left Sprengel's deformity,

and asymmetric kidney growth. AR 39. These impairments resulted in the following limitations in the six domains of functioning:

- Less than marked limitations in acquiring and using information;
- No limitations in attending and completing tasks;
- No limitations in interacting and relating with others;
- <u>Marked limitations</u> in moving and manipulating objects;
- No limitations in caring for herself;
- <u>Marked limitations</u> in health and physical well being.

AR 40; *see* AR 137-38. Because A.P.'s impairments resulted in marked limitations in these two domains, her impairments were found to functionally equal the listings. AR 39; *see* AR 137.

Specifically with respect to the three-step medical improvement review standard, the ALJ made the following findings:

**At step one**, the ALJ found that there had been medical improvement in the impairments that were present at the time of the CPD (citing 20 C.F.R. § 416.994a(c)). AR 40.

**At step two**, the ALJ found that A.P.'s CPD impairments no longer functionally equaled the severity of the listed impairments (citing 20 C.F.R. § 416.994a(b)(2); 20 C.F.R. § 416.926a; SSR 05-03p). AR 41. With respect to the six domains of functioning, the ALJ found that A.P. now had:

- No limitations in acquiring and using information;

- No limitations in attending and completing tasks;

- No limitations in interacting and relating with others;

- <u>Less than marked limitations</u> in moving and manipulating objects;

- No limitations in caring for herself;

- No limitations in health and physical well being.

AR 44-49.

**At step three**, the ALJ found that A.P. did not have any other impairments that were not considered at the time of the CPD, nor had she developed any additional impairments subsequent to the CPD. AR 49. Because the step two analysis addressed all of A.P.'s impairments, the ALJ determined that A.P. did not have impairments that met or medically or functionally equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, Appendix 1 (citing 20 C.F.R. §§ 416.924(d), 416.925, 416.926, 416.926a). AR 49-50.

## VI.    Issues for Review

Plaintiff argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. ECF No. 11 at 6. Specifically, she argues the ALJ: (1) improperly discredited her testimony regarding A.P.'s symptoms; (2) improperly weighed the medical opinion evidence; and (3)

improperly determined that A.P.'s impairments no longer functionally equaled the listings. *Id.* at 3.

## VII.   Discussion

### A.   The ALJ did not Discount Plaintiff's Testimony Regarding A.P.'s Symptoms

Plaintiff argues the ALJ erred by discounting her testimony regarding A.P.'s symptoms without providing germane reasons. ECF No. 11 at 6-8. Specifically, she argues that the ALJ, without explanation, discounted her testimony regarding (1) A.P.'s scoliosis symptoms, and (2) A.P.'s loss of strength in her left hand. *Id.* at 7-8.

In determining how a child's impairments affect his or her functioning, the Commissioner considers statements from the child's parents and caregivers. *See* 20 C.F.R. § 416.924a(a)(2). These descriptions from people who are "in a position to observe [the child's] symptoms and daily activities have routinely been treated as competent evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Accordingly, competent lay testimony as to the child's symptoms "cannot be disregarded without comment." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). "If the ALJ wishes to discount the testimony of the lay witness, he [or she] must give reasons that are germane to each witness for doing so." *Id.*; *accord Ramos-Cuevas o/b/o J.R.C. v. Colvin*, No. 15-CV-3091-FVS, 2016 WL 8232241, at *6 (E.D. Wash. 2016). However, this is only necessary if the ALJ

actually rejects the proffered testimony or makes findings that are inconsistent with it. *Cf. Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010).

### 1. Plaintiff's testimony regarding A.P.'s scoliosis

Plaintiff first argues that the ALJ, without explanation, discredited her testimony regarding A.P.'s scoliosis symptoms. ECF No. 11 at 7.

Plaintiff testified that A.P. had an upcoming annual checkup at Seattle Children's Hospital with a spine specialist. AR 99. She stated that this appointment was not for any planned treatment but just to "talk about what to look forward to," as the doctor was anticipating that A.P. would need surgery as she got older. AR 99. Plaintiff testified that A.P. no longer outwardly appeared to have scoliosis, but that her spine still had "a little bit of an abnormality." AR 101, 116. She testified that as A.P. grew, the doctor anticipated that "they may have to fix that and straighten it out for her." AR 101. However, she said the doctor wanted to wait because A.P. was still growing. AR 101.

Regarding A.P.'s activities, Plaintiff testified that A.P.'s spine doctor said that A.P. had to be careful about what kind of sports she participated in. AR 101. She could not participate in contact sports or sports that required inversion, such as gymnastics.[3] AR 102. However, Plaintiff testified that A.P. could run, swing,

---

[3] A.P.'s spine doctor did opine, though, that she could participate in sports such as basketball or softball. AR 744.

swim, and play with her brothers. AR 102-03. When A.P. participated in these activities, though, she had "to be a little bit more careful" and "her stamina [was] a little limited." AR 103, 109.

The ALJ discussed Plaintiff's testimony regarding A.P.'s scoliosis symptoms. *See* AR 42. The ALJ acknowledged Plaintiff's testimony that A.P. continued to have scoliosis despite her normal outward appearance, which was consistent with the imaging and her spine doctor's findings. AR 42. The ALJ also noted Plaintiff's testimony that A.P. was not actively being treated for scoliosis and that no surgery was planned, which was also consistent with the medical record. AR 42. Based on Plaintiff's testimony and the medical evidence, the ALJ concluded that A.P.'s scoliosis no longer caused marked limitations in the domains of "moving and manipulating objects" and "health and physical well being," like it did at the time of the CPD. AR 47-49. Thus, because Plaintiff's testimony actually supported the conclusion that A.P.'s scoliosis condition had medically improved, *see* 20 C.F.R. § 926a(j)(2)(iv), the ALJ did not need to discredit or reject her testimony.

### 2. Plaintiff's testimony regarding A.P.'s left hand symptoms

Plaintiff next argues that the ALJ discredited her testimony regarding A.P.'s left hand symptoms without giving specific reasons. ECF No. 11 at 7.

Plaintiff testified that Dr. Douglas Hanel had recently treated A.P.'s left

hand, which is her non-dominant hand.[4] AR 100, 103. Plaintiff stated that A.P. had

undergone four surgeries on her left hand. AR 100. At the most recent surgery, Dr.

Hanel had performed some skin grafts and opened up the webbing in A.P.'s hand,

giving her more flexibility in her fingers. AR 100. Plaintiff agreed that Dr. Hanel

was "pretty pleased" with the results and she testified that since the surgeries,

things were "so far so good." AR 100. She said no further hand surgeries were

planned. AR 100. She also testified that A.P. had "a limit to what she [could] do . .

. strength-wise" with her hand, but that she was regularly participating in therapy

to increase her strength. AR 103-04.

Plaintiff also testified that A.P. had some bending in her left index finger and

the middle finger "a little bit." AR 104. A.P. wore a splint to try to straighten them

out. AR 104. Plaintiff said that as a last resort, Dr. Hanel might have to break the

bone, but because it was A.P.'s non-dominant hand, they were trying the splint first

"to see if it [could] work itself out." AR 104-05.

Regarding A.P.'s activities, Plaintiff testified that A.P. had no problems

writing, given that her hand condition was in her non-dominant hand. AR 110. She

also was able to dress herself, although sometimes she needed to start with her

dominant hand. AR 110. Plaintiff testified that A.P. could do "a lot of things" with

---

[4] A.P. had no problems with her right hand. AR 105.

her left hand—it was "a challenge, but she still does them." AR 110. She stated, "it's a challenge, but it's looking good." AR 110.

The ALJ also discussed Plaintiff's testimony regarding A.P.'s left hand symptoms. *See* AR 42. The ALJ acknowledged Plaintiff's testimony that A.P. continued to have left hand weakness and some issues with her index and middle fingers. AR 42. However, the ALJ also noted Plaintiff's testimony that the surgeries helped A.P. regain left hand function and that she had no problems with her right hand. AR 42. Based on Plaintiff's testimony and the medical evidence, the ALJ concluded that A.P.'s hand condition no longer caused marked limitations in the domains of "moving and manipulating objects" and "health and physical well being," like it did at the time of the CPD. AR 47-49. Thus, because Plaintiff's testimony also supported the conclusion that A.P.'s hand condition had medically improved, *see* 20 C.F.R. § 926a(j)(2)(iv), the ALJ again did not need to discredit or reject her testimony.

**B. The ALJ did not Improperly Weigh the Medical Opinion Evidence**

Plaintiff argues that the ALJ erred in evaluating and weighing the medical opinion evidence. ECF No. 11 at 8-9. He argues the ALJ did not "give great or significant weight" to any one medical provider's opinion. *Id.* at 9. He also argues the ALJ failed to expressly assign weight to the treatment notes from Dr. Hanel (A.P.'s hand specialist) and the other providers at Seattle Children's Hospital. *Id.*

In this case, the ALJ expressly weighed the medical opinions of three physicians: Mark Dales, M.D. (A.P.'s spine specialist), Coral Hilby, M.D. (a non-examining family practitioner), and Christy Ulleland, M.D. (a non-examining pediatrician). AR 44. The ALJ gave "some weight" to Dr. Dales' opinion and "partial weight" to Dr. Hilby's and Dr. Ulleland's opinions. AR 44.

### 1. ALJ not giving great weight to any one provider's opinion

Plaintiff first argues that the ALJ erred by not giving "great or significant weight" to any one physician's opinion. ECF No. 11 at 9. However, ALJs are not required to base their conclusions "on any one medical opinion; rather they consider the evidence in the record as a whole." *Schleve v. Colvin*, No. 1:13-CV-00563-SKO, 2014 WL 2590106, at *8 (E.D. Cal. 2014) (citing 20 C.F.R. § 404.1545(a)(1)). Because "the ALJ's assessment need not align fully with any one medical opinion," *Papaccio v. Colvin*, No. CV-16-01225-PHX DGC, 2017 WL 1241880, at *6 (D. Ariz. 2017) (citing 20 C.F.R. § 404.1546(c)), Plaintiff's argument that the ALJ erred by not assigning great weight to any one physician's opinion fails.

### 2. Treatment notes from Seattle Children's Hospital

Plaintiff also argues that the ALJ failed to expressly assign weight to the treatment notes from Dr. Hanel and the other providers at Seattle Children's Hospital. ECF No. 11 at 9 (citing AR 802-818).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15**

ALJs are required to "consider" and "evaluate" all medical opinion evidence. 20 C.F.R. § 416.927(b)-(c); *see Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). The regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s)," including physical or mental limitations resulting from the claimant's impairments. 20 C.F.R. § 416.927(a)(1).

However, not every record in the medical file is a "medical opinion" as defined in the regulations. *See Schmit v. Comm'r of Soc. Sec.*, No. 2:14-CV-2373-KJN, 2016 WL 1170851, at *3 (E.D. Cal. 2016). For example, routine chart notes that document a claimant's treatment and do not discuss the doctor's judgments regarding the claimant's functional limitations are not "medical opinions." *Id.* Accordingly, ALJs do not need to explicitly weigh these types of records. *Id.*; *Champagne v. Colvin*, 582 F. App'x 696, 697 (9th Cir. 2014) ("[Plaintiff's] contention that the ALJ disregarded his treaters' opinions about his limitations lacks merit, because none of the treating providers gave an opinion regarding his functional limitations.").

The records Plaintiff argues that the ALJ failed to expressly weigh are those from Seattle Children's Hospital. ECF No. 11 at 9 (citing AR 802-818). They include notes from Dr. Dales (whose opinion the ALJ did expressly weigh), AR 802-04, nurse practitioner Eva Juel-Medina, AR 805-07, Dr. Hanel, AR 808-816,

and an occupational therapist, AR 817-18. The majority of these records are routine treatment notes that simply document A.P.'s reason for the visit, the provider's physical examination findings, and the provider's general plan for future treatment. AR 805-818. Accordingly, the ALJ did not need to specifically weigh these.

To the extent portions of the records Plaintiff highlights could be construed as opinions, the ALJ analyzed these extensively throughout the decision. The ALJ first discussed these records when explaining how Plaintiff's testimony was consistent with the medical record. *See* AR 42 (citing AR 812). The ALJ then discussed each one of Dr. Hanel's treatment notes, outlining his examination findings, his impressions, and A.P.'s reports following surgery. AR 42-43 (citing AR 808-816). The ALJ also outlined the entirety of nurse practitioner Juel-Medina's note in concluding that A.P.'s kidney condition had stabilized. AR 43 (citing AR 805-07). Finally, the ALJ discussed these records in analyzing A.P.'s limitations in the physical domains. *See* AR 47, 49. Thus, the ALJ did not error in evaluating and weighing the medical opinion evidence.

## C. Substantial Evidence Supports the ALJ's Finding that A.P.'s Impairments no Longer Functionally Equaled the Listings

Plaintiff finally argues that the ALJ improperly determined that A.P.'s impairments no longer functionally equaled the listings. ECF No. 11 at 9-13. She challenges the ALJ's analysis with respect to only one domain of functioning:

moving about and manipulating objects, which considers the child's gross and fine motor skills.[5] *Id.* at 11-13; *see* 20 C.F.R. § 416.926a(j). Citing various portions of her testimony and the medical records, Plaintiff contends that substantial evidence does not support the ALJ's finding that A.P. had less than marked limitations in this domain. ECF No. 11 at 11-13.

A child has "marked" limitations when his or her impairments "seriously interfere" with his or her ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). A "marked" limitation implies a limitation that is "more than moderate" but "less than extreme." 20 C.F.R. § 416.926a(e)(2).

When considering whether the child has "marked" or "extreme" limitations in any domain, ALJs compare the child's functioning to the typical functioning of children the same age who do not have impairments. 20 C.F.R. § 416.926a(f)(1). The regulations provide examples of activities that illustrate the typical functioning of children in different age groups. 20 C.F.R. § 416.926a(b)(1). For example, in the domain of "moving about and manipulating objects," the regulations state that school-aged children like A.P. should have developing gross motor skills that allow them to move at an efficient pace about their schools, homes, and neighborhoods. 20 C.F.R. § 416.926a(j)(2)(iv). Their increasing strength and

---

[5] Plaintiff mentions the domain of "interacting and relating with others" in passing, but does not argue, discuss, or otherwise raise this issue further. ECF No. 11 at 11-12. Therefore, she does not challenge the ALJ's finding with respect to this domain.

coordination should expand their abilities "to enjoy a variety of physical activities, such as running and jumping, and throwing, kicking, catching and hitting balls in informal play or organized sports." 20 C.F.R. § 416.926a(j)(2)(iv). Finally, their "developing fine motor skills should enable [them] to do things like use many kitchen and household tools independently, use scissors, and write." 20 C.F.R. § 416.926a(j)(2)(iv).

The regulations also provide examples of functional limitations in this domain, although these are not classified by age group and also do not necessarily describe a "marked" or "extreme" limitation. 20 C.F.R. § 416.926a(j)(3). Examples include difficulties: with motor activities (*e.g.*, stumbling, unintentionally dropping things, etc.), going up and down stairs, balancing, coordinating gross motor movements (*e.g.*, bending, kneeling, crawling, running, etc.), sequencing hand or finger movements, gripping or grasping objects, or using a pencil or scissors. 20 C.F.R. § 416.926a(j)(3)(i-vi).

In this case, the ALJ concluded that A.P. still had some limitations in the domain of "moving about and manipulating objects," but that these limitations had improved from "marked" (which they had been at the time of the CPD, *see* AR 138), to "less than marked." AR 47. With respect to A.P.'s gross motor skills, A.P. was able to run, swing, swim, and play with her brothers, although she had "to be a little bit more careful" and "her stamina [was] a little limited." AR 102-03, 109.

Per her orthopedist, she was able to walk, hop, and move around "without any problem, whatsoever." AR 743. Her orthopedist cleared her to participate in sports such as basketball and softball, but wanted her to avoid sports that involved head and neck stress, including contact sports and sports that required inversion (*e.g.*, gymnastics).[6] AR 744.

The orthopedist believed that A.P.'s Sprengel's deformity prevented her from having full shoulder elevation, but also stated that A.P. did "not seem to be limited by [this]." AR 743, 802. While A.P. would "not be able to do activities that required both upper extremities overhead" and "would not be allowed to join the military," she still could do "most activities that she want[ed] to be doing." AR 802-03.

With respect to A.P.'s fine motor function, A.P. had no difficulty writing, tracing, or cutting with scissors. AR 110, 113. She also was able to dress herself, although sometimes she needed to start with her dominant hand. AR 110. After four successful left hand surgeries, A.P.'s treating hand specialist reported that she became able to use "that hand in daily activities and does not report disability or pain in the hand." AR 812; *see also* AR 746. The hand specialist opined that "overall her hand is doing fantastic" and that she "has great hand function." AR

---

[6] Plaintiff states that A.P. was "not allowed to . . . participate in sports" at all. ECF No. 11 at 11. This is incorrect.

815. Plaintiff testified that A.P. had some residual weakness in her left hand, but was still "okay with her left" and able to do "a lot of things" with it. AR 110.

This evidence supports the ALJ's finding that A.P. still had some limitations in the domain of "moving about and manipulating objects," but that these limitations had improved from "marked" to "less than marked." AR 47. Accordingly, the ALJ did not err in determining that A.P.'s impairments no longer functionally equaled the listings.

## VIII.  Order

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED.**

2.  Defendant's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED.**

3.  Judgment shall be entered in favor of Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel, and close the file.

**DATED** this 27th day of September, 2019.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 21**